AF Approval ___NMA___        Chief Approval ___MF___

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                     CASE NO. 6:26-cr-00160—RBD—NWH

DONTAE JONES

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Gregory W. Kehoe, United States Attorney for the Middle District of Florida,

and the defendant, DONTAE JONES, and the attorney for the defendant,

Fritz Scheller, Esq., mutually agree as follows:

**A.**    **Particularized Terms**

    1.    Count Pleading To

       The defendant shall enter a plea of guilty to Count One of the

Information. Count One charges the defendant with bank fraud, in violation

of 18 U.S.C. § 1344.

    2.    Maximum Penalties

       Count One carries a maximum sentence of 30 years'

imprisonment, a fine of up to $1,000,000, or twice the gross gain caused by the

offense, or twice the gross loss caused by the offense, whichever is greater, a

term of supervised release of not more than five years, and a special

assessment of $100.

Defendant's Initials _D.J._

3.   <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

<u>First</u>:      the defendant knowingly carried out or attempted to carry out a scheme or artifice to defraud a financial institution or to get money, funds, credits, assets, or other property from a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact;

<u>Second</u>:   the false or fraudulent pretenses, representations, or promises were material;

<u>Third</u>:     the defendant intended to defraud the financial institution; and

<u>Fourth</u>:   the financial institution was federally insured.

4.   <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge the defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the charges giving rise to this plea agreement.

Defendant's Initials _D.S._                    2

5.    Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

6.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A and 18 U.S.C. § 3663(a) and (b), defendant agrees to make full restitution to the victim(s) of the offense.

7.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a

Defendant's Initials $\mathcal{D.J.}$

3

two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to move pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to

4

Defendant's Initials _____

forfeiture, pursuant to 18 U.S.C. § 982(a)(2)(A), whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the following: a money judgment in the amount of $221,600, which is the amount of proceeds the defendant admits he obtained as the result of the commission of the bank fraud scheme to which the defendant is pleading guilty. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time

5

Defendant's Initials _D.J._

it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets

Defendant's Initials D.D.

6

held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Defendant's Initials _D.J._   7

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

**B.    <u>Standard Terms and Conditions</u>**

1.    <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution

Defendant's Initials D.J.

8

to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

9

Defendant's Initials _D.J._

2.    Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to

Defendant's Initials _D̄.J̄._

10

make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and

11

Defendant's Initials _D.J.-_

for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make

Defendant's Initials _____

12

with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this

Defendant's Initials D.J.

13

office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront

Defendant's Initials D.J.

14

and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _D.I._

15

12.    Entire Agreement

This plea agreement, including Exhibit A, constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 10 day of June, 2026.

GREGORY W. KEHOE
United States Attorney

_____
DONTAE JONES
Defendant

_____
Fritz Scheller, Esq.
Attorney for Defendant

_____
Chauncey A. Bratt
Assistant United States Attorney

_____
Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials DJ.

16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:26-cr-00160-RBD-NWH

DONTAE JONES

### PERSONALIZATION OF ELEMENTS

First:      Did you knowingly carry out a scheme or artifice to
            defraud a financial institution or to get money, funds,
            credits, assets, or other property from a financial
            institution by using false or fraudulent pretenses,
            representations, or promises about a material fact?

Second:     Were the false or fraudulent pretenses, representations, or
            promises material?

Third:      Did you intend to defraud the financial institution?

Fourth:     Was the financial institution federally insured?

Defendant's Initials _D.J._                17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:26-cr-00160-RBD-NWH

DONTAE JONES

### FACTUAL BASIS

In May 2020, Dontae Jones ("Jones") fraudulently obtained a
Paycheck Protection Program ("PPP") loan by falsely claiming that Jones'
company, Posh Jones LLC, had 13 employees and an average monthly
payroll of $80,760. In fact, at the time of Jones' PPP loan application, this
company had few if any employees other than Jones and had little to no
payroll. In support of his PPP loan application, Jones submitted a falsified
federal unemployment tax return as well as a fraudulent PPP Borrower
Application Form that had been prepared for him by conspirator H.E. Based
on this fraudulent PPP application, on or about May 11, 2020, Celtic Bank
wired $201,900 to a bank account controlled by Jones.

#### Background Regarding the CARES Act and PPP

In March 2020, the Coronavirus Aid, Relief, and Economic Security
Act, or the "CARES Act," was enacted to provide immediate assistance to
individuals, families, and organizations affected by the COVID-19 pandemic.

18

Defendant's Initials _D.J._

Among its various provisions, the CARES Act authorized the SBA to guarantee loans through the Paycheck Protection Program (PPP), under which the full principal amount of the loans could qualify for forgiveness.

The PPP allowed qualifying small-businesses and other organizations to receive loans with a maturity of two years and an interest rate of one percent. PPP loan proceeds had to be used by businesses on qualifying expenses including payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the loan to be forgiven if businesses spent the proceeds on these qualifying expenses within eight weeks of receipt and used at least 75 percent of the forgiven amount for payroll.

Under the PPP, the maximum loan amount a business could obtain was the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula principally considered the borrower's aggregate payroll costs from the preceding twelve months for all domestic employees. Once an average monthly payroll cost was established, the borrower multiplied that amount by 2.5 to arrive at the total maximum PPP loan amount. This payroll-based formula expressly excluded the compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary.

19

Defendant's Initials D.J.

### *The PPP Application Process: the SBA Form 2483*

To apply for a PPP loan, potential borrowers electronically submitted an SBA Form 2483 with supporting payroll documentation to a financial institution that administered the loan and served as custodian of the funds. On the SBA Form 2483, an authorized representative of the borrower had to make several certifications about his business operations and related information. Those certifications included, among others, that: (i) the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes, or paid independent contractors as reported on a Form 1099-MISC; (ii) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

Further, when submitting the SBA Form 2483, the authorized representative had to certify that, should he knowingly use the PPP funds for unauthorized purposes, the United States could hold him legally liable, including for charges of fraud. The applicant also had to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents. Such supporting documents could include payroll tax

20

Defendant's Initials D.J.

filings with the Internal Revenue Service ("IRS"), such as the Employer's Quarterly Federal Tax Return and the "IRS Form 941."

Finally, the applicant had to certify that he understood that should he knowingly make false statements on the forms, he was subject to criminal penalties.

### *Background regarding Posh Jones LLC*

Posh Jones LLC ("Posh Jones") was incorporated in the state of Florida by Jones on Oct. 1, 2019.  Jones was listed in the Articles of Organization as both the manager and registered agent of Posh Jones.

### *Jones' Filing of Fraudulent PPP Loan Application for Posh Jones*

On May 11, 2020, Jones submitted false and fraudulent documents to Celtic Bank by way of Bluevine[1] in support of a $201,900 PPP loan application for Posh Jones, with a listed business address on North Orange Avenue in Orlando, Florida.  Jones submitted these documents over the internet from a location in the Middle District of Florida. The false and fraudulent documents included with his submission included the following:

- A Paycheck Protection Program Borrower Application Form (SBA Form 2483) dated May 11, 2020. Jones falsely certified in this form that

---

[1] Bluevine was a Fintech company located in Redwood City, California that was authorized to accept, vet, and approve PPP loan applications on behalf of FDIC insured lenders, like Celtic Bank, who in turn had an agreement with the U.S. Small Business Administration (SBA), the agency that funded PPP loans.

Defendant's Initials *D. J.*

21

Posh Jones had 13 employees and an average monthly payroll of $80,760.

Jones further certified in this form that he would use the loan proceeds "to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." He acknowledged that if the funds were knowingly used for unauthorized purposes "the federal government may hold me legally liable, such as for charges of fraud."

- Form 940 Employer's Annual Federal Unemployment Tax Return for 2019 for Posh Jones. This return falsely stated that Posh Jones paid $969,123.12 to employees during 2019. In fact, Posh Jones had no employees for 2019, and this return was falsified.

### *Disbursement and Use of PPP Loan Proceeds*

On May 11, 2020, as a result of Jones's fraudulent PPP loan application for Posh Jones, Celtic Bank wired $201,900 into a Wells Fargo business checking account in the name of Posh Jones, ending in 2141 ("Account x2141"). The sole signatory for this account, which was opened on October 24, 2019, was Dontae Jones. At the time that the wire was made, Account x2141 had a balance of $2,144.51. Thereafter, the majority of the disbursements out of Account x2141 were transfers to Dontae Jones's personal checking account, and personal expenditures for food, entertainment and other items.

### *FDIC-Insured Lender*

Celtic Bank is federally insured by the FDIC and has been since at least 2010.

22

Defendant's Initials D.J.

*Jones' and N.H.'s Filing of Fraudulent*
*PPP Loan Application for Black Ocean Group*

Jones' associate, N.H., obtained an even bigger loan for N.H.'s company, Black Ocean Group Investments ("Black Ocean Group"). N.H. and Jones then shared the proceeds of that fraudulently obtained loan. Specifically, on May 15, 2020, N.H. obtained a PPP loan amounting to $602,950 by falsely claiming that Black Ocean Group had 35 employees and an average monthly payroll of $241,180. In fact, at the time of N.H.'s PPP loan application, as both Jones and N.H. knew, Black Ocean Group had few if any employees other than N.H. and had little to no payroll. In support of the PPP loan application, N.H. submitted falsified corporate quarterly tax filings as well as a fraudulent PPP Borrower Application Form.

The funds obtained from the Black Ocean Group loan were primarily used for personal expenditures by Jones or N.H., including a $42,000 purchase at a men's jewelry company and a $40,000 purchase from a luxury vacation rental company.

*Referrals*

Jones and N.H. were assisted in obtaining the Posh Jones and Black Ocean Group loans by another individual, H.E. Jones and N.H. paid H.E. 10% of their fraudulently obtained loans in exchange for H.E.'s assistance. After receiving their fraudulent PPP loans, Jones and N.H. would refer other

Defendant's Initials _D J_                    23

individuals to H.E. in exchange for receiving a fee amounting to a percentage of the loans that H.E. helped those individuals obtain. H.E. would also collect a fee amounting to a percentage of those loans.

One of the individuals whom Jones and N.H. referred to H.E. was Faubert Joseph ("Joseph"). On May 21, 2020, Joseph fraudulently obtained two PPP loans amounting to a total of $778,549 by falsely claiming that his companies, Look Who's Fit LLC and PG1 Fitness LLC, had 16 and 17 employees, respectively, and annual payrolls that cost millions of dollars. In fact, at the time of Joseph's PPP loan applications, these companies had no employees other than Joseph and had no payroll. H.E. prepared falsified 2019 corporate quarterly tax filings as well as fraudulent PPP Borrower Application Forms that Joseph submitted to obtain the loans.

After Joseph received the fraudulent PPP loans, he paid $59,100 of the loan proceeds to Black Ocean Group, and he sent $19,700 of the loan proceeds to Posh Jones. Joseph was convicted of Bank Fraud for obtaining the loans. *See* U.S. District Court for the Middle District of Florida, Case No. 6:23-cr-102-RBD-DCI, Doc. 60.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not

24

Defendant's Initials _D.J_ -

include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

Defendant's Initials _D_

25

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 6:26-cr- 00160-RBD-NWH
**FILE UNDER SEAL**

DONTAE JONES

## EXHIBIT A

1.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure

Defendant's Initials ___D.J.___          1

from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

2.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

Defendant's Initials ꓘ.ꓘ.                     2

3.    <u>Cooperation - Responsibilities of Parties</u>

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and

Defendant's Initials _D.J._                3

may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)      The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant

Defendant's Initials _D.J._                4

agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials _D.J._                  5